JAMES F. MCKAY III, CHIEF JUDGE
In this mandamus action, defendant, Leon A. Cannizzaro, Jr., District Attorney for Orleans Parish ("D.A."), appeals the November 22, 2017 judgment ordering the D.A. to turn over certain files to plaintiff, Charles Maldonado ("Mr. Maldonado"), pursuant to his public records requests. Mr. Maldonado answered the appeal seeking a modification of the judgment, alleging that the trial court erred in not ordering production of all open files and in failing to find that the D.A. was arbitrary and capricious. Mr. Maldonado also seeks attorney's fees for work performed on this appeal.
For the reasons that follow, we affirm the trial court's judgment and find no merit in the assignments of error set forth in Mr. Maldonado's answer to the appeal. We remand to the trial court for a determination of Mr. Maldonado's additional attorney's fees.
*736 STATEMENT OF FACTS AND PROCEDURAL HISTORY
On April 27, 2017, Mr. Maldonado, a staff writer with The Lens ,[1] issued a public records request to the D.A. pursuant to the Louisiana Public Records Law, La. R.S. 44:1, et seq. The request sought "[a]ny and all 'D.A. Subpoenas' delivered to witnesses beginning Jan. 1, 2016 through the date of this request (4/27/17)."
On May 2, 2017, the D.A. responded, in pertinent part, as follows:
In the present case, the request for "D.A. Subpoenas" delivered to witnesses is overly broad, particularly in light of the fact that the request involves a review of literally thousands of closed files, a substantial number of which are stored off-site. Therefore, compliance with your request would require this Office [sic] manually review thousands of files stored on premises and off-site, the retrieval fee for which is $8.10 per file. Given the potential volume of the records that would have to be reviewed in order to respond to your request, the fact that the records cannot [sic] are not readily identifiable and locatable, and the retrieval costs involved, the District Attorney's Office submits that obtaining the records requested by you and preparing them for public review, including redacting and removing privileged information and documentation therefrom and determining whether there is a potential for further criminal litigation, would be unreasonably burdensome. Accordingly, your request is denied at this time.
On May 15, 2017, Mr. Maldonado filed a Petition for Writ of Mandamus against the D.A., seeking to compel production of the requested records. The petition sought attorney's fees and costs pursuant to La. R.S. 44:35(D) and alleged that the D.A. was arbitrary and capricious in failing to respond to the records request.
On May 22, 2017, Mr. Maldonado issued a second records request to the D.A. as follows:
Any and all records related to the use of so-called "DA Subpoenas," including but not limited to log entries, records showing time of service, records of returns, files in a computerized or paper filing system, meeting notes with witnesses who received them, any other case notes reflecting their use, written communications with witnesses who received them, written communications with attorneys for those witnesses, written communications with others regarding "DA subpoenas," and other records maintained by ADAs, clerks, secretaries or by the DA's office regarding their use. Timeframe for this request is January 1, 2016-present (May 22, 2017).
On May 25, 2017, the D.A. responded, in pertinent part, as follows:
The records request fails to describe a specific public record in the Orleans Parish District Attorney's Office's custody or control. The Orleans Parish District Attorney's Office does not maintain a copy of subpoenas in a particular file or location, nor does the District Attorney's Office maintain a list of cases in which a subpoena was issued. Under the Public Records Law, a records custodian is not required to compile a list in order to respond to a public records request. Rather, the custodian need only make the record available in the particular format in which it is maintained. (Citations omitted).
The May 25, 2017 response further reiterated that the records request was overly *737 broad, burdensome, and expensive.[2]
The parties met on May 25, 2017, in an attempt to resolve the matter. The D.A. requested that Mr. Maldonado submit a narrower records request.
Following the meeting, Mr. Maldonado submitted a third records request on May 30, 2017, seeking the following:
Any and all "DA subpoenas" issued to witnesses or other parties as part of the following cases:
State of La. v. Dale Lambert, case number 517-162
State of La. v. Chevroun Smith, case number 514-924
State of La. v. Phillip Gibson, case number 506-743
State of La. v. Karl Peters, case number 491-939
State of La. v. Darryl Griffin, case number 479-359
State of La. v. Durelle Bowens, case number 507-266
State of La. v. Dwayne Diaz, case number 518-162
State of La. v. Jennifer Gaubert, case number 517-669
State of La. v. Nathaniel Payton, case number 486-528
State of La. v. Jerome Gibson, case number 512-137
Mr. Maldonado has acknowledged that the D.A. made six of the requested case files available for viewing.
Also on May 30, 2017, Mr. Maldonado requested all D.A. subpoenas maintained or saved in the personal case notes or computer files of Assistant District Attorneys Jason Napoli, Laura Rodrigue, Inga Petrovich, and Sara Dawkins from December 1, 2016, through May 30, 2017. On June 2, 2017, the D.A. responded, stating that the personal case notes were not subject to a public records request. However, two D.A. subpoenas were turned over in connection with that request.
On June 7, 2017, Mr. Maldonado issued a fourth public records request, asking for "[a]ny and all 'DA subpoenas' maintained or saved in the personal case notes or computer files of all assistant district attorney's." In response, on June, 7, 2017, the D.A. stated:
To the extent your request seeks disclosure of the personal case notes of assistant district attorneys, personal case notes are excepted from public view under La. R.S. 44:4(C).
To the extent the request seeks disclosure of "DA subpoenas" maintained or saved in the computer files of all assistant district attorneys, the request fails to describe a specific public record in the Orleans Parish District Attorney's Office's custody and control. The Orleans Parish District Attorney's Office does not maintain a copy of subpoenas in a particular computer file or location, nor does the District Attorney's Office maintain a list of cases in which a subpoena was issued.
Further, under the Public Records Law, a public official is relieved of the obligation to make a public record available for inspection when doing so would be unreasonably burdensome or expensive. (Citations omitted).
On July 25, 2017, Mr. Maldonado filed a First Amended and Restated Petition for Injunctive and Declaratory Relief. Mr. Maldonado states therein that the D.A. failed to properly respond to the four separate records requests. The amended petition *738 seeks compliance with the requests and a declaration that the D.A. subpoenas are not subject to exception.
The matter was tried October 23, 2017. Mr. Maldonado testified regarding his public records requests and the limited responses, which he received.
A.D.A.'s Donna Andrieu (Chief or Appeals), and David Pipes (Chief of Trials) testified on behalf of the D.A. Both witnesses explained how the D.A.'s office organized its files and why a search for D.A. subpoenas would be overly burdensome and expensive.
In a judgment rendered November 22, 2017, the trial court ordered the D.A. to produce: (1) all "D.A. subpoenas or D.A. Notices" for files that were screened and charges were rejected, from January 1, 2016, to April 27, 2017, by November 30, 2017; and (2) all "D.A. subpoenas or D.A. Notices" in all closed files from January 1, 2016, to April 27, 2017. The judgment decreed that the D.A. subpoenas contained in any open files are exempt from production. Mr. Maldonado's request for attorney's fees and costs was granted, in an amount to be determined at a later date. The trial court also ruled that the D.A. was not arbitrary and capricious. Finally, the judgment ordered the parties to appear for a status conference on December 13, 2017, to update the Court as to the process of reviewing and producing D.A. subpoenas from the closed or rejected files.
The D.A. filed the present appeal asserting that the trial court erred in partially granting Mr. Maldonado's public records requests, and in granting Mr. Maldonado's request for attorney's fees and costs. Mr. Maldonado has answered the appeal, asserting that the trial court erred in not ordering production of the files in all open cases, and in failing to find that the D.A. was arbitrary and capricious. Additionally, Mr. Maldonado seeks attorney's fees for defending this appeal.
DISCUSSION
Motion to Dismiss Appeal
As a procedural matter, we will first address Mr. Maldonado's Motion to Dismiss Appeal, which was referred to the merits by order of this Court. After consideration, we deny the motion.
Mr. Maldonado seeks to dismiss the appeal arguing that the D.A. acquiesced in the judgment based on actions and public statements. Specifically, Mr. Maldonado points to a November 15, 2017 written statement made by the D.A.'s Public Information Officer, Ken Daley, that the D.A. intended to comply with the judgment when rendered. Mr. Maldonado further relies on the fact that on November 27, 2017, the D.A. produced a single document in compliance with the judgment. Finally, he points to a November 30, 2017 press release, wherein the D.A. reiterated that the judgment would be complied with. Mr. Maldonado asserts that subsequent to the December 2017 status conference, the D.A. chose to reverse its position and file an appeal.
In opposition to the motion to dismiss, the D.A. argues that its production of a single document in response to only one portion of the trial court's judgment does not constitute a complete and total acquiescence. The D.A. further states that the single document offered Mr. Maldonado had been located in connection with a search conducted at the request of the New Orleans City Council. Finally, the D.A. maintains that its attempt to amicably resolve this matter, by offering all documents uncovered in connection with the City Council search, does not constitute *739 acquiescence in the judgment. We agree.
La. C.C.P. art. 2085 provides:
An appeal cannot be taken by a party who confessed judgment in the proceedings in the trial court or who voluntarily and unconditionally acquiesced in a judgment rendered against him. Confession of or acquiescence in part of a divisible judgment or in a favorable part of an indivisible judgment does not preclude an appeal as to other parts of such judgment.
As this Court explained in Koerner & Lambert, A Professional Law Corp. v. Allstate Ins. Co. , 363 So.2d 546, 547 (La. App. 4th Cir.1978),
Acquiescence in a judgment is never presumed, and the party alleging abandonment must establish by direct or circumstantial evidence that the party now appealing intended to acquiesce and to abandon his right to appeal. Furthermore, appeals are favored in law, and forfeiture of a party's right to an appeal through acquiescence should be decreed only when the party's intention to acquiesce and to abandon his right of appeal is clearly demonstrated. (citations omitted).
On the record before us, Mr. Maldonado has not established that the D.A.'s post-trial actions demonstrate intent to acquiesce in the judgment and to abandon its right to appeal. Moreover, considering the judicial pronouncement that appeals are favored in law, the motion to dismiss the appeal is denied.
Assignment of Error No. 1: Partially Granting the Public Records Request
The D.A. argues that the trial court erred in granting the public records request for D.A. subpoenas contained in the closed and rejected files from January 1, 2016, to April 27, 2017. For the reasons that follow, we find no merit in this assignment of error.
Article XII, Section 3 of the Louisiana Constitution provides that no person shall be denied the right to "examine public documents, except in cases established by law." The Louisiana legislature has codified this right in the Public Records Act, La. R.S. 44:1, et seq. Specifically, La. R.S. 44:31 provides:
A. Providing access to public records is a responsibility and duty of the appointive or elective office of a custodian and his employees.
B. (1) Except as otherwise provided in this Chapter or as otherwise specifically provided by law, and in accordance with the provisions of this Chapter, any person of the age of majority may inspect, copy, or reproduce any public record.
(2) Except as otherwise provided in this Chapter or as otherwise specifically provided by law, and in accordance with the provisions of this Chapter, any person may obtain a copy or reproduction of any public record.
(3) The burden of proving that a public record is not subject to inspection, copying, or reproduction shall rest with the custodian.
It is well established that "[a]s with Article XII, Section 3, the Public Records Law should be construed liberally in favor of free and unrestricted access to public documents." Shane v. Parish of Jefferson , 2014-2225, p. 9 (La. 12/8/15), 209 So.3d 726, 735 (citing Landis v. Moreau , 2000-1157, p. 4 (La. 2/21/01), 779 So.2d 691, 695 ). "Whenever there is doubt as to whether the public has the right of access to certain records, the doubt must be resolved in favor of the public's right to see; to allow otherwise would be an improper and arbitrary restriction on the public's *740 constitutional rights". Id. at pp. 9-10, 209 So.3d at 735 (citing In re Matter Under Investigation , 2007-1853, p. 5 (La. 7/1/09), 15 So.3d 972, 989 ).
La. R.S. 44:33 states, in pertinent part:
A. (1) When a request is made for a public record to which the public is entitled, the official ... who has responsibility for the record shall have the record segregated from other records under his custody so that the public can reasonably view the record.
(2) If, however, segregating the record would be unreasonably burdensome or expensive, or if the record requested is maintained in a fashion that makes it readily identifiable and renders further segregation unnecessary, the official shall so state in writing and shall state the location of the requested record.
B. (1) If the public record applied for is immediately available, because of its not being in active use at the time of the application, the public record shall be immediately presented to the authorized person applying for it. If the public record applied for is not immediately available, because of its being in active use at the time of the application, the custodian shall promptly certify this in writing to the applicant, and in his certificate shall fix a day and hour within three days, exclusive of Saturdays, Sundays, and legal public holidays, for the exercise of the right granted by this Chapter.
Regarding enforcement of a public records request, La. R.S. 44:35 provides, in pertinent part:
A. Any person who has been denied the right to inspect, copy, reproduce, or obtain a copy or reproduction of a record under the provisions of this Chapter, either by a determination of the custodian or by the passage of five days, exclusive of Saturdays, Sundays, and legal public holidays, from the date of his in-person, written, or electronic request without receiving a determination in writing by the custodian or an estimate of the time reasonably necessary for collection, segregation, redaction, examination, or review of a records request, may institute proceedings for the issuance of a writ of mandamus, injunctive or declaratory relief, together with attorney fees, costs and damages as provided for by this Section, in the district court for the parish in which the office of the custodian is located.
B. In any suit filed under Subsection A above, the court has jurisdiction to enjoin the custodian from withholding records or to issue a writ of mandamus ordering the production of any records improperly withheld from the person seeking disclosure. The court shall determine the matter de novo and the burden is on the custodian to sustain his action. The court may view the documents in controversy in camera before reaching a decision. Any noncompliance with the order of the court may be punished as contempt of court.
In Beckett v. Serpas , 2012-1349, pp. 7-8 (La. App. 4 Cir. 3/20/13), 112 So.3d 348, 353, this Court stated:
It is well established that the examination of records or requests for reproduction cannot be so burdensome as to interfere with the operation of the custodian's constitutional and legal duties. Vandenweghe v. Parish of Jefferson , 11-52, p. 12 (La. App. 5 Cir. 5/24/11), 70 So.3d 51, 58, writ denied, 2011-1333 (La. 9/30/11), 71 So.3d 289 ; Elliott v. District Attorney of Baton Rouge, 94-1804 (La. App. 1 Cir. 9/14/95), 664 So.2d 122, 126. The jurisprudence further recognizes that any restriction or limitation imposed by the custodian places the burden *741 on the custodian to justify the restriction or limitation. Id.
In this case, the D.A. asserts that the exception to the Public Records Law recognized in Beckett should be applied here. Based on the testimony of A.D.A.'s Andrieu and Pipes, the D.A. maintains that the requests would require thousands of man hours and many thousands of dollars in record retrieval and transportation costs. Thus, the D.A. argues that such an undertaking would interfere with the D.A.'s constitutionally mandated duty to prosecute criminal violations.
A.D.A. Andrieu testified before the trial court that the files are arranged by defendant name and case number, and that there is no index that would show whether a D.A. subpoena is contained within a file. Moreover, there is no separate file that contains all D.A. subpoenas issued by the office, and no list of cases in which a D.A. subpoena was issued. Thus, to find a D.A. subpoena, the entire file would have to be manually searched.
A.D.A. Pipes testified that Mr. Maldonado's request included approximately 8,000 to 9,000 cases, which would require about 9,000 man hours to review the files. He explained that first the files would have to be located, as some closed files are stored offsite. Additionally, privileged and personal information contained in the files would have to be redacted before any documents could be turned over. A.D.A. Pipes opined that considering the volume of work, a number of attorneys would have to be pulled from their regular duties and be dedicated full-time to the task. He further explained that because of budget restrictions, A.D.A.'s have no support staff or administrative staff.
We find the facts of the present case to be distinguishable from Beckett . In Beckett , the plaintiff appealed the trial court's judgment, which denied, in part, her request for public records pursuant to a petition for writ of mandamus filed against the City of New Orleans. The request sought, in part, all documents generated as a result of any Public Integrity Bureau investigation conducted within the last ten years of any allegations that any member of the New Orleans Police Department violated three separate rules of the New Orleans Police Department Operations Manual, including, but not limited to, all statements obtained, photographs taken, and reports generated in connection with this investigation. In affirming the trial court's denial of the record's request, we determined that the City demonstrated that segregating ten years of files (that were categorized by the officer's name and not by the specific rule violation) was unreasonably burdensome.
The D.A. argues that the records request in the present case is even more burdensome than in Beckett . Considering that Mr. Maldonado's request involves a much shorter period of time (January 1, 2016 to April 27, 2017), than the ten-year period sought in Beckett , we disagree.
In the reasons provided from the bench, the trial judge acknowledged that the records requests may very well be a burden, but further recognized the responsibility of the D.A., as a public agency, to be accountable for the way it executes its duties. The trial judge concluded that the public records request for D.A. subpoenas contained in closed and rejected files was not overly burdensome, finding that time period requested was not a substantial period of time. We find no error in the trial court's finding.
As the party seeking to prevent disclosure, it is the D.A.'s statutory burden to prove that withholding the public records is justified. See La. R.S. 44:31(3) ; La. R.S. 44:35(B). Based on our comprehensive *742 review of the record, we find that the D.A. did not meet this burden.
Assignment of Error No. 2: Awarding Attorney's Fees and Costs
The November 22, 2017 judgment granted Mr. Maldonado's request for attorney's fees and costs under La. R.S. 44:35(D), in an amount to be determined at a later hearing. We find no error in that ruling.
Regarding the issuance of attorney's fees under the Public Records Law, La. R.S. 44:35(D) provides: "If the person seeking the right to inspect or to receive a copy of the public record prevails in his enforcement suit, the court shall award him reasonable attorney fees and other litigation costs. If such person prevails in part, the court may in its discretion award him reasonable attorney fees or an appropriate portion thereof." (emphasis added). As we will discuss separately below, a plaintiff may also be entitled to actual damages and civil penalties when the custodian acted arbitrarily or capriciously pursuant to La. R.S. 44:35E(1).
In this case, because we have decided that Mr. Maldonado had the right to inspect some of the documents requested, he has prevailed in part in his mandamus action. Based on our review of the record before us, we find no abuse of discretion in the trial court's granting of Mr. Maldonado's request for attorney fees under La. R.S. 44:35(D).
Mr. Maldonado's Answer to the Appeal
Mr. Maldonado filed an answer to the appeal asking this Court to modify or reverse portions of the trial court's judgment. He asserts in his answer that the trial court erred in: (1) not ordering production of D.A. subpoenas contained in all open case files; and (2) failing to find that the D.A. was arbitrary and capricious. Mr. Maldonado also seeks an additional award of attorney's fees and costs in defending this appeal.
Exclusion of Open Case Files
The trial court determined that the D.A. subpoenas contained within the open case files are exempt from production under the Louisiana Public Records Law, La. R.S. 44:3. We agree.
La. R.S. 44:3(A) states, in pertinent part:
Nothing in this Chapter shall be construed to require disclosures of records, or the information contained therein, held by the offices of the ... district attorneys ..., which records are:
(1) Records pertaining to pending criminal litigation or any criminal litigation which can be reasonably anticipated, until such litigation has been finally adjudicated or otherwise settled ....
Clearly, the D.A.'s open case files requested by Mr. Maldonado represent cases wherein criminal litigation is pending. Accordingly, we find that the trial court correctly ruled that the open files are exempt from production.
Arbitrary and Capricious
Mr. Maldonado further argues in his answer to the appeal that the trial court erred in finding that the D.A. was not arbitrary and capricious. We find no merit in this assignment of error.
Pursuant to La. R.S. 44:35(E)(1),
If the court finds that the custodian arbitrarily or capriciously withheld the requested record or unreasonably or arbitrarily failed to respond to the request as required by R.S. 44:32, it may award the requester any actual damages proven by him to have resulted from the actions of the custodian except as hereinafter provided. In addition, if the court finds that the custodian unreasonably or arbitrarily failed to respond to the request as required by R.S. 44:32 it may *743 award the requester civil penalties not to exceed one hundred dollars per day, exclusive of Saturdays, Sundays, and legal public holidays for each such day of such failure to give notification. (emphasis added).
It is well established that an award of civil penalties pursuant to La. R.S. 44:35(E)(1) is discretionary with the trial judge, and is reviewed under an abuse-of-discretion standard. Innocence Project New Orleans v. New Orleans Police Dep't, 2013-0921, p. 8 (La. App. 4 Cir. 11/6/13), 129 So.3d 668, 674 (citing Ott v. Clarkson, 2003-1287, p. 4 (La. App. 4 Cir. 12/10/03), 863 So.2d 663, 666 ).
"The terms 'arbitrary and capricious' mean willful and unreasoning action, absent consideration and in disregard of the facts and circumstances of the case." Toups v. City of Shreveport , 2010-1559, p. 3 (La. 3/15/11), 60 So.3d 1215, 1217. "However, when there is room for two opinions, an action is not arbitrary or capricious when exercised honestly and upon due consideration, even though it may be believed an erroneous conclusion has been reached." Id. at pp. 3-4 (citing Four States Realty Co., Inc. v. City of Baton Rouge , 309 So.2d 659, 664 (La. 1974) ).
In his brief to this Court, Mr. Maldonado describes the D.A.'s actions as an absolute failure and staunch refusal to act. The record does not support this assertion. To the contrary, the record demonstrates that the D.A. timely responded to each records request, providing an explanation as to why the documents were not readily available, and the difficulty involved in locating the subpoenas within the large volumes of case files. The D.A. met with Mr. Maldonado's attorney in order to resolve the matter. Email communications contained in the record also demonstrate an effort by the D.A. to cooperate with Mr. Maldonado. Furthermore, the D.A. turned over some D.A. subpoenas and made some entire files available to Mr. Maldonado that he chose not to review. Mr. Maldonado acknowledged in his amended petition that he did not want to view entire files. Rather, he only wanted to be supplied with the D.A. subpoenas.
In sum, the record contains no evidence that the D.A. acted unreasonably or was arbitrary and capricious in handling Mr. Maldonado's public records request. Thus, there was a reasonable basis for the trial court's ruling on this issue.
Attorney's Fees for Answering the Appeal
Mr. Maldonado seeks additional attorney's fees for defending this appeal. It is well established in our jurisprudence that,
An increase in attorney fees is usually awarded where a party who was awarded attorney fees by the trial court is forced to and successfully defends an appeal. The award of additional attorney fees is to keep the appellate judgment consistent with the underlying judgment. To determine the amount of attorney fees, factors that are considered include "the skill exercised by the attorney and the time and work required on appeal."
State of Louisiana, Dept. of Transp. & Develop. v. Monteleone , 2011-1013, p. 34 (La. App. 5 Cir. 11/13/12), 106 So.3d 153, 174 (internal citations omitted); See also, Whitbeck v. Champagne , 2014-245, p. 22 (La. App. 3 Cir. 10/1/14), 149 So.3d 372, 386 (citing McFadden v. Import One, Inc. , 2010-952, p. 16 (La. App. 3 Cir. 2/9/11), 56 So.3d 1212, 1223 ).
Mr. Maldonado has successfully defended this appeal; and, therefore, he is entitled to additional attorney's fees. However, we find the record before us is insufficient to determine the appropriate amount of attorney's fees for Mr. Maldonado's attorneys'
*744 post-judgment work on appeal. Accordingly, we remand to the trial court for a hearing on the issue of attorney's fees for this appeal.
CONCLUSION
For the foregoing reasons, Mr. Maldonado's motion to dismiss appeal is denied. Finding no merit in the D.A.'s assignments of error, we affirm the November 22, 2017 judgment and remand to the trial court for a determination of additional attorney's fees to which Mr. Maldonado is entitled for work performed on this appeal. All other relief requested in Mr. Maldonado's answer to the appeal is denied.
AFFIRMED, MOTION TO DISMISS APPEAL DENIED; ANSWER TO APPEAL DENIED; REMANDED

The Lens is a non-profit investigative journalism website based in New Orleans.

The response is dated May 25, 2017. Assistant District Attorney Donna Andrieu testified that she mailed the response on May 25, 2017. Mr. Maldonado claims he did not receive the response until a later time, when he asked the D.A.'s office to mail him a copy.